**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 3:19-CR-0340 |
| v. | (MANNION, J.) |
| | (SAPORITO, M.J.) |
| MARTIN LARA-CASADO, | |
| Defendant. | |

## MEMORANDUM

This matter is before the court on the motion to review detention order based on changed circumstances (Doc. 48) filed by the defendant, Martin Lara-Casado, a federal inmate at the Lackawanna County Prison (LCP).

On December 3, 2019, Lara-Casado was charged by indictment, along with two other individuals, with conspiracy to manufacture, distribute, and possess with the intent distribute 40 grams or more of fentanyl, in violation of 21 U.S.C. § 846; possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1); and distribution of fentanyl and heroin, in violation of 18 U.S.C. § 841(a)(1). The indictment also contained a forfeiture allegation. (Doc. 1). On December 5, 2019, he appeared before the undersigned United States magistrate

judge for an initial appearance and an arraignment. He entered a plea of not guilty to the charges in the indictment. He returned on December 10, 2019, for a detention hearing. After the hearing, we ordered that Lara-Casado be detained pending trial, and he has been in custody since. (Doc. 36).

Lara-Casado now asks that we reconsider our order because of the risk of being confined in a large group during the COVID-19 global pandemic. In his motion, Lara-Casado attached a certificate of non-concurrence (Doc. 48-1) certifying that the assigned assistant United States attorney does not concur in his motion. Lara-Casado filed a brief in support of his motion (Doc. 49), and his counsel filed a notice stating that the issue of release was not resolved and that a hearing is requested. (Doc. 51). The government has filed a brief in opposition to the defendant's motion (Doc. 50). The defendant filed a reply brief. (Doc. 52). The motion is ripe for a decision.

## I.    *Statement of Facts*

If convicted of the charges contained in the indictment, Lara-Casado faces a maximum term of 40 years in prison, with a mandatory minimum sentence of five years' imprisonment. At the detention hearing

held on December 10, 2019, the parties agreed that the presumption under 18 U.S.C. § 3142(e)(3) applied.[1] At the detention hearing and in its brief, the government proffered that, over the course of an investigation, law enforcement determined that the defendant had engaged with others in a long-term conspiracy to distribute large amounts of fentanyl in the Hazleton area. (Doc. 50, at 2). The known drug dealing activity by Lara-Casado is from June 2017 when he sold drugs to a confidential informant inside a Toyota minivan. (*Id*.) The investigation into Lara-Casado continued in May 2019 when additional controlled buys were made from him by law enforcement. (*Id*.) These controlled buys include Lara-Casado selling 1,000 bags of fentanyl to a confidential informant on May 8, 2019, and a co-conspirator selling 1,500 bags the following day from the same minivan used by Lara-Casado in 2017. (*Id*.) The same co-conspirator (Jonior Pujols) sold additional quantities of fentanyl to confidential informants on May 15, 2019 (2,500 bags); May 23, 2019 (2,000 bags, again from the same Toyota minivan); and May 31, 2019 (4,500 bags). (*Id*.)

---

[1] The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.

On June 4, 2019, a search warrant was executed at 1023 East Broad Street in Hazleton. (*Id.*) During the investigation, surveillance officers saw Lara-Casado entering and leaving this property on several occasions. (*Id.* at 2-3) During the execution of the search warrant, an active fentanyl bagging operation was found in the basement, including a table with fentanyl, bags, and other paraphernalia. (*Id.* at 3) The search of the premises yielded: 62 grams of raw fentanyl; 8,750 packaged baggies estimated at an additional 161 grams of fentanyl; $27,500 in cash; 70,000 new and unused baggies; and other packaging paraphernalia. (*Id.*). Also recovered from a bedroom (not the basement) of this property occupied by a third co-defendant (Carlos Castillo) was a 9mm handgun and $200 of pre-recorded buy money from the previous controlled buys. Lara-Casado was arrested nearby on state charges. (*Id.*)

After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, we concluded that Lara-Casado be detained pending trial because the government proved by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person in the community. We also found that Lara-Casado did not produce the

quantum of evidence necessary to overcome the presumption. In addition to the findings made on the record at the hearing, the reasons for detention included the following: the weight of evidence against the defendant is strong; he is subject to a lengthy period of incarceration if convicted; his participation in criminal activity while on probation, parole, or supervision; his lack of stable employment; his significant ties or family outside the United States; and he is subject to removal or deportation after serving any period of incarceration. (Doc. 36). We also found significant the recommendation of detention by the United States Probation Office.

Lara-Casado seeks reconsideration of our order of detention, even if only temporarily, due to the risks associated with being confined in a large group during the COVID-19 global pandemic. He does so notwithstanding the fact that he exhibits no symptoms of COVID-19 and he suffers from no other health condition that would make him more vulnerable to the health risks posed by COVID-19.

We granted Lara-Casado's request for a hearing on the motion which we conducted telephonically, with his consent, on April 28, 2020, with the assistance of an interpreter. At the hearing, Lara-Casado

testified that he has no adverse medical conditions, his current needs are met at LCP, and he is symptom free of the coronavirus. If released, he testified that he would live with his mother and his 19- and 13-year-old siblings in Hazleton. For the reasons discussed herein, we will deny Lara-Casado's motion.

## II.   Discussion

### a. COVID-19 Global Pandemic

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[2] "COVID-19 is the infectious disease caused by the novel coronavirus." *United States v. Roeder*, ___ Fed. App'x ___, 2020 WL 1545872, at *1 (3d. Cir. Apr. 1, 2020) (per curiam). We are also cognizant that the President of the United States has declared a national emergency and the Governor of Pennsylvania has declared a state of emergency and issued a stay-at-home order through April 30, 2020, and extended it to May 8, 2020, for some counties and June 4, 2020, for the majority of counties—including Lackawanna County, where the defendant is detained at LCP. Further,

---

[2] World Health Org., *WHO Characterizes COVID-19 as a Pandemic* (Mar. 11, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

the Governor has ordered all schools to remain closed for the remainder of the 2019-2020 academic school year. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention facilities. *See Roeder*, 2020 WL 1545872, at *2; *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020).

### b. Conditions of LCP

Lara-Casado alleges that LCP inmates report a scarcity of soap and cleaning supplies, and that hand sanitizer is unavailable. Further, he asserts that inmates share phones, sinks, and toilets with other inmates and are near each other. He also maintains that, as additional people are arrested who have been out in the community as the coronavirus spreads and are brought to the LCP, they will be held with the existing population unless they are found to be symptomatic. As a consequence, Lara-Casado contends that it is difficult or impossible for those inmates most at risk to engage in social distancing and self-quarantine precautions as recommended by the Centers for Disease Control and Prevention.

Lawyer visits have been limited to meetings through glass making the preparation of a defense difficult, and potentially impossible.

In its brief in opposition and at the hearing, the government concedes a recent disclosure that a guard at LCP recently tested positive for the COVID-19 virus, which resulted in inmates being placed in lockdown, permitted only to leave their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. The government proffers in its brief that LCP has experienced no other staff member or inmate exhibiting flu-like symptoms. At the April 28, 2020, hearing, the government proffered that, as of that date, no other inmate or corrections officer at LCP has tested positive for the coronavirus. We further take judicial notice of recent policies and procedures adopted by LCP to prevent or limit the spread of COVID-19 within the prison. *See Shakur v. Costello*, 230 Fed. App'x 199, 201 (3d Cir. 2007) (per curiam) (taking judicial notice of county prison procedures). Under these new policies and procedures, LCP has suspended contact visits, regular visitation, and visitation from volunteers, including religious leaders. It has implemented aggressive sanitation programs and suspended all programs that utilize "outside"

employees. It has prohibited individuals other than prison and medical staff to proceed any further than the reception area. It has limited attorney visits with inmates to meetings through a glass partition in a lawyer visitation room unless written permission is granted by the warden or the deputy warden. It has cancelled all conferences and out-of-county training. It has provided for weekly contact with officials from the state department of corrections. It has posted educational flyers in the blocks and in the reception area. It has also implemented body temperature screening checks for all employees and lawyers as they enter the facility. *United States v. Mendoza*, No. 5:20-mj-00011, 2020 WL 1663361, at *3 & n.4 (M.D. Pa. Apr. 3, 2020).

### c. *18 U.S.C. § 3142(f)(2)—Reconsideration of Detention*

Lara-Casado seeks release because of the existence of COVID-19 and the alleged adverse conditions of LCP. The existence of COVID-19 was not known to Lara-Casado at the time of his earlier detention hearing. The Bail Reform Act provides that a defendant who is detained pending trial may move the court to reconsider its detention order if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that it has a material bearing on

the issue of whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community. 18 U.S.C. § 3142(f)(2).

In his brief in support of the instant motion, Lara-Casado presents only speculative arguments that his confinement in the LCP increases the health risks posed by COVID-19.

At the hearing on April 20, 2020, Lara-Casado, age 22, testified that he is a citizen of the Dominican Republic and a lawful permanent resident of the United States. He has no adverse medical conditions, he is not prescribed any medication, and he has no symptoms of COVID-19.

Lara-Casado's motion is found wanting for several reasons. Other than a single guard who appears to have had no contact with the movant, there have been no confirmed cases of COVID-19 in the LCP. Moreover, LCP has implemented new policies and procedures to protect its population as referenced above. There is no evidence that such measures are, or have been, inadequate. Our court has temporarily continued all in-court proceedings through May 31, 2020, which should ameliorate a criminal defendant's concerns about assisting his or her attorney in the preparation of a defense. Further, we are confident that LCP will respect

the privileged nature of the communications between attorneys and their inmate-clients, as nothing to the contrary has been alleged or otherwise brought to our attention.

In the absence of any evidence of a medically diagnosed health condition that would increase the risk to Lara-Casado posed by COVID-19, or any evidence that LCP is not providing—or is unable to provide—appropriate medical care, we are not persuaded that the defendant should be released. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (recognizing that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread"). Accordingly, we are not persuaded to reconsider our order of detention.

### d. 18 U.S.C. § 3142(i)—Temporary Release

In his brief, Lara-Casado also seeks relief under 18 U.S.C. § 3142(i) which allows a judicial officer, by subsequent order, to permit the temporary release of a person to the extent that the judicial officer determines such release to be necessary for preparation of the person's

defense or another compelling reason. He cites the same reasons above in support of his position that the global pandemic constitutes "another compelling reason" to justify his release.

Section 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *Roeder*, 2020 WL 1545872, at *3.

Until recent events spawned by the COVID-19 global pandemic, defendants seeking release under § 3142(i) generally did so because it was necessary to prepare the person's defense. Those courts finding "another compelling reason," however, typically granted release "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Lee*,

No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)); *see also United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS, which could no longer be managed by correctional authorities); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshals Service refused to take custody of him until his wounds closed).

A defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan., Mar. 25, 2020). We must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i). *Id.* A decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both

individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."

*Id.*

We incorporate our analysis above under § 3142(f)(2) to arrive at the same conclusion here. The defendant's release plan, which includes residing with his mother and his 19- and 13-year-old siblings, does not appear to mitigate or exacerbate other COVID-19 risks to Lara-Casado or to others. Nor are we persuaded that the defendant's proposed release would not increase COVID-19 risks to others—both to the members of the household into which it is proposed the defendant be released and to the surrounding community.

While the court remains sympathetic to Lara-Casado's concerns regarding the possibility of health complications caused by the COVID-19 virus, "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, No. 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020); *see also United States v. Pritchett*, No. CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including a diagnosis of asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, No. 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that, while the defendant suffered from hypertension, sleep apnea, and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus) (citing *United States v. Davis,* 2020 U.S. App. LEXIS 9987 (3d Cir. Mar. 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Williams*, No. PWG-19-8, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates had tested positive for COVID-19 and defendant suffered from allergies and asthma); *United States v. Bilbrough*, No. TDC-20-0033, 2020 WL 1694362 (D. Md. Apr. 7, 2020) (affirming magistrate judge's denial of motion by defendant who suffered from diabetes); *United States v. Julius Williams*, No. PWG-13-544, 2020 WL 1434130 (D. Md. Mar. 24, 2020) (denying a 67-year-old defendant's motion); *United States v. Penaloza*, No. TDC 19-238, 2020 WL 1555064 (D. Md. Apr. 1, 2020) (denying motion of defendant who suffered from a heart murmur); *United States v. Jefferson*, No. CCB-19-487, 2020 WL 1332011 (D. Md. Mar. 23, 2020) (denying motion of asthmatic defendant). Thus, we are left to speculate whether Lara-Casado's continued incarceration would likely increase his risk of harm. However, mindful of the rapidly evolving conditions in prisons throughout the nation as well as the COVID-19 pandemic, we will entertain a renewed request for release if at some point in the future it becomes clear that there are compelling reasons to justify the

defendant's release. *United States v. Sanchez*, No. 1:19-cr-00152, 2020 WL 1814159 *7 (M.D. Pa. Apr. 9, 2020) (citing *United States v. Lee*, No 19-CR-298 (KBJ), 2020 1541049, at *7 (D.D.C. Mar. 30, 2020)).

## III.   Conclusion

For the reasons set forth above, Lara-Casado has failed to demonstrate a basis for reopening or reconsidering our prior detention order under 18 U.S.C. § 3142(f), and he has failed to establish compelling reasons for temporary release under 18 U.S.C. § 3142(i). Therefore, his motion (Doc. 48) is denied.

An appropriate order follows.

*s/Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
U.S. Magistrate Judge

Dated: May 13, 2020